UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BRIAN SASS,

     Petitioner,

  v.

CALIFORNIA BOARD OF
PRISON TERMS, et al.,

     Respondents.

NO. CIV. S 01-0835 MCE KJM P

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

Brian Sass (hereinafter "Petitioner"), a California prisoner proceeding *pro se*, seeks a writ of habeas corpus. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On March 16, 2005, the Magistrate Judge filed her findings and recommendations, which were served on all parties and which contained notice that any objections to the findings and recommendations were to be filed within ten days. The California Board of Prison Terms (hereinafter "Respondent" or

1

"BPT") filed timely objections to the Magistrate's findings and recommendations.  Petitioner subsequently filed a timely reply to Respondent's objections.  In accordance with the provisions of 28 U.S.C. § 636(b)(1), this Court conducted a *de novo* review of the case.  Having carefully reviewed the entire file, the Court rejects the Magistrate's findings and recommendations.  For the reasons discussed below, Petitioner's application for a writ of habeas corpus is DENIED.

**BACKGROUND**

Petitioner, currently confined at Folsom State Prison in Represa, California, has applied for a writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254. (Amended Petition at 4(b):(i)(2).)  Petitioner was sentenced to life in prison, with the possibility of parole after fifteen years, as a result of his 1988 convictions for second degree murder, hit and run death, gross vehicular manslaughter, and felony drunk driving. Petitioner's 1988 convictions were based on the following events: while operating his truck under the influence of drugs and alcohol, Petitioner drove into oncoming traffic and caused a head-on collision, which killed a 27-year-old woman who was five months pregnant. At the time of the collision, Petitioner had four DUI convictions on record, with three more DUI charges pending.  (Answer at 2:4-11; Traverse at 2:18-23; F&R Objections at 7:13-26; Response to F&R Objections at 1:17-24.)

Petitioner does not challenge the validity of his 1988 convictions with the present petition.  (Traverse at 3:3-5.)

2

Rather, Petitioner seeks collateral relief from three decisions of the California Board of Prison Terms (hereinafter "Respondent" or "BPT"), which denied him parole in 1996, 1999, and 2000, respectively. (Traverse at 1:17-27.)

On September 12, 2002, this Court held that all challenges to Petitioner's 1996 parole proceeding were time-barred. Consequently, the Court will only address Petitioner's challenges to the 1999 and 2000 parole proceedings, both of which were affirmed by a state trial court, a state appellate court, and the Supreme Court of California. While Respondent contends that Petitioner failed to exhaust his state court remedies with regard to the 1999 proceedings, the Court finds this argument to be unsupported factually (Amended Petition at 4(a)-4(b); Ex. F; Ex. G; Ex. H) and without merit on a statutory basis. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Duncan v. Walker, 533 U.S. 167, 183 (2001) (Stevens, J., concurring).

Petitioner contends, through various arguments, that in both 1999 and 2000, Respondent's decision to deny Petitioner parole resulted in a violation of Petitioner's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Amended Petition at 4(a)-4(c); Traverse at 28:6-9; 28:16-18; 29:14-19; 39:6-10.)

//
//
//

3

**STANDARD**

At first glance, it appears that a prisoner may challenge the constitutionality of his or her confinement under both § 2241 and § 2254. 28 U.S.C. §§ 2241(c)(3), 2254(a) (1994). A proper understanding of the interaction between § 2241 and § 2254, however, leads to the conclusion that they apply in different situations. White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004). When a prisoner meets the threshold requirement of being in custody pursuant to state court judgment, § 2254 is properly seen as a limitation on the more general grant of habeas authority in § 2241. Id. at 1008; see also Felker v. Turpin, 518 U.S. 651, 662 (1996) ("authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'").

Adopting the view of the Ninth Circuit, this Court finds that § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction. White, 370 F.3d at 1007, 1008, 1009-10 (citing approvingly Cook v. New York State Div. Of Parole, 321 F.3d 274, 278 (2d Cir. 2003) (rejecting petitioner's contention that § 2241 was applicable because "his custody is 'pursuant to' an order of the parole board rather than a state court")). Consequently, all of the statutory requirements of § 2254 apply to the present

4

1 case, no matter what statutory label the prisoner has assigned to
2 his petition. Id. at 1007 (citing Walker v. O'Brien, 216 F.3d
3 626, 633 (7th Cir. 2000).

4     Under § 2254, a district court shall entertain an
5 application for a writ of habeas corpus in behalf of a person in
6 custody pursuant to the judgment of a State court only on the
7 ground that he is in custody in violation of the Constitution of
8 the United States. 28 U.S.C. § 2254(a). Further, a petition for
9 a writ of habeas corpus shall not be granted with respect to any
10 claim unless the adjudication of the claim resulted in a decision
11 that was contrary to, or involved an unreasonable application of,
12 clearly established Federal law, as determined by the Supreme
13 Court of the United States. 28 U.S.C. § 2254(d).

14     Clearly established federal law is defined by the holdings
15 of the United States Supreme Court in effect at the time
16 California adjudicated Petitioner's claim. Williams v. Taylor,
17 529 U.S. 362, 412 (2000). Notably, circuit law is only
18 persuasive authority for purposes of determining whether a state
19 decision is an unreasonable application of Supreme Court
20 jurisprudence. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.
21 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

22     Finally, where the state summarily denies a petition without
23 comment, the district court will look to the last reasoned
24 decision on the issue. Ylst v. Nunnemaker, 501 U.S. 797 (1991).
25 If no such decision exists, the district court must independently
26 review the record to determine whether the state ruling was
27 contrary to, or an unreasonable application of, clearly
28 established federal law. Delgado v. Lewis, 223 F.3d 976, 981-82

1  (9th Cir. 2000).

**ANALYSIS**

On the basis of the parties' claims, the Court is presented with three questions. First, may this Court consider Petitioner's application for a writ of habeas corpus? Second, does Petitioner have a federal liberty interest in parole? Finally, if Petitioner does have a liberty interest in parole (thereby entitling him to due process protections as a matter of right), what process must California afford Petitioner before it can deprive him of that interest?

**1.  Justiciability**

Contrary to Respondent's claims, the Court finds that Petitioner's application for a writ of habeas corpus is not moot. First, Petitioner has alleged concrete injuries at the hands of Respondent, which this Court can remedy. See Spencer v. Kemna, 523 U.S. 1, 7 (1998). Specifically, Petitioner alleges continued imprisonment and the depravation of federal due process rights as the result of unfair parole hearings that lacked the appropriate process (Amended Petition at 4(a)-4(c); Traverse at 28:6-9; 28:16-18; 29:14-19; 39:6-10). See id. As Petitioner contends, a fair hearing in either 1999 or 2000 could have resulted in his release from prison. Thus, assuming that Petitioner's constitutional rights were violated by the parole boards in either 1999 or 2000, ordering a new hearing, one conducted in accordance with both state and federal law, regardless of its

1  outcome, would remedy any constitutional violations by offering
2  Petitioner a fair parole opportunity.  Respondent asserts that
3  ordering a new hearing would be of no consequence since
4  Petitioner has had three hearings since 2000 (2001, 2002, and
5  2004) in which he was denied parole.  This assertion is without
6  merit.  It necessarily assumes that all of the subsequent
7  hearings were conducted in accordance with federal law.  (Answer
8  at 6:28-7:8.)

9      Second, Respondent's argument that subsequent parole
10 hearings moot any previous hearings (Opposition to F&R at 3:10-
11 4:3), if true, places Petitioner's claim squarely within a narrow
12 exception to the general mootness doctrine: the injuries alleged
13 here would then be capable of repetition, yet evading judicial
14 review.  Spencer, 523 U.S. at 17-18.  Petitioner would be unable
15 to complete a full judicial review (state and federal) of a
16 habeas application before a subsequent hearing mooted that
17 application.  Consequently, a string of unconstitutional hearings
18 would continually preclude effective judicial review of alleged
19 constitutional violations.  The present case exemplifies such a
20 situation.  Thus, under both the general rule and its exception,
21 Petitioner's application is properly before this Court.
22 //
23 //
24 //
25 //
26 //
27 //
28 //

7

**2.   Petitioner's Federal Due Process Claim**

Petitioner contends that in both 1999 and 2000, Respondent's decision to deny him parole resulted in a violation of his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution (Amended Petition at 4(a)-4(c)).[1] Because Petitioner challenges a state action, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. Amend. XIV, § 1. Federal courts examine questions of procedural due process in two steps. First, they must ascertain if there is a liberty or property interest that was interfered with by the state. Second, if there is such an interest, the courts must determine if the procedures attendant upon a depravation of that interest were constitutionally sufficient. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); Hewitt v. Helms, 459 U.S. 460, 472 (1983) (receded from and rejected on separate grounds).

Addressing the first question (the existence of a liberty interest), the Court finds that a liberty interest protected by

---

[1] While Petitioner mentions a substantive due process violation in his Traverse (Traverse at 31:26-33:13), it appears that Petitioner is simply contesting the procedures accompanying his parole hearings — a question of procedural due process, not substantive due process. Nevertheless, even if Petitioner is asserting a substantive due process violation, the Court does not recognize such a claim. First, it would be untimely. Second, Petitioner has failed to identify a fundamental right that has been abridged in such a way as to implicate substantive due process protections.

8

the Due Process Clause "must rise to more than an abstract need or desire and must be based on more than a unilateral hope. [Indeed], an individual claiming a protected interest must have a legitimate claim of entitlement to it." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (internal citations and quotations omitted).

The United States Supreme Court has expressly denied any entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Specifically, the Supreme Court found that a convicted persons has no constitutional or inherent right to be released prior to the expiration of a valid sentence. A valid conviction, with all of its procedural safeguards, extinguishes that liberty interest. Indeed, once sentenced, the criminal defendant has been constitutionally deprived of his liberty and all interests therein. Id.

However, as an exception to this general rule, a state can create an enforceable liberty interest in parole through the "unique structure and language" of its parole statutes. Id. at 12. The Supreme Court has found that "mandatory language" in a parole statute creates an expectancy of release and gives rise to a protected liberty interest. Board of Pardons v. Allen, 482 U.S. 369, 371, 377-78 (1987); Greenholtz, 422 U.S. at 12; see also I.N.S. v. St. Cyr, 533 U.S. 289, 345-46 (2001) (recognizing the mandatory language standard).

Before discussing the Supreme Court's mandatory language standard in greater depth, this Court will briefly address Respondent's assertion that an expanded standard, announced in

9

Sandin v. Connor, 515 U.S. 472 (1995), applies to the present case. (Answer at 7:19-8:8.) This Court acknowledges the Supreme Court's holding in Sandin and its interest in moving away from the mandatory language standard. However, this Court finds that when considering a liberty interest in parole, the mandatory language standard announced in Greenholtz and Allen is the only clearly established federal law squarely on point. 28 U.S.C. § 2254(d).

Sandin is by no means clearly established in the context of parole rights. To begin with, Sandin dealt with a prisoner's *conditions* of confinement, not the possibility of *release* from confinement. Sandin, 515 U.S. at 480-81, 483 n.5, 483-84 (citing Allen approvingly in the context of "freedom from restraint"); see also McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002) (Sandin "was limited to internal prison disciplinary regulations"). Further, Sandin did not overrule Greenholtz or Allen. Sandin, 515 U.S. at 483 n.5; see also Ellis v. District of Colombia, 84 F.3d 1414, 1417-18 (D.C. Cir. 1996); Orellana v. Kyle, 65 F.3d 29, 32 (5th Cir. 1995). As such, these cases are still the controlling law when considering liberty interests in parole. Notably, the Supreme Court later cited Greenholtz and Allen approvingly as examples of cases in which state statutes created liberty interests through the use of mandatory language. St. Cyr, 533 U.S. at 345-46. Finally, even some members of the Supreme Court itself acknowledged the lack of clarity accompanying the new standard announced in Sandin: "What design lies beneath these key words? The Court ventures no examples, leaving consumers of the Court's work at sea, unable to fathom

1 | what would constitute an 'atypical, significant deprivation.'"
2 | <u>Sandin</u>, 515 U.S. at 490 n.2 (Ginsburg, J., dissenting).
3 |     As such, this Court is left to follow <u>Greenholtz</u> and <u>Allen</u>
4 | as the clearly established federal law.  28 U.S.C. § 2254(d).  As
5 | discussed above, there is no constitutional right to parole.
6 | <u>Greenholtz</u>, 422 U.S. at 7.  Consequently, in order to establish a
7 | protected liberty interest in parole, Petitioner must look to the
8 | unique structure and language of California's parole statutes.
9 | <u>Id</u>. at 12.  If the structure and language of those statutes
10 | creates an entitlement to parole release or a presumption or
11 | expectation of parole release, then California has established a
12 | protected liberty interest.  In both <u>Greenholtz</u> and <u>Allen</u>, the
13 | Supreme Court found that the existence of mandatory language
14 | created the necessary presumption and expectation of parole.
15 | <u>Allen</u>, 482 U.S. at 371 (holding that mandatory language created a
16 | presumption of parole release); <u>Greenholtz</u>, 422 U.S. at 11-12
17 | (holding that mandatory language created a protectible
18 | entitlement to parole release).  Thus, under clearly established
19 | federal law, the existence of mandatory language in a state
20 | parole statute will give rise to a federal liberty interest
21 | protected by the Due Process Clause of the Fourteenth Amendment.
22 | //
23 | //
24 | //
25 | //
26 | //
27 | //
28 | //

11

Turning to the question of whether California's parole statutes use mandatory language, § 3041 of the California Penal Code[2] states in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel . . . shall again meet with the inmate and *shall normally set* a release date as provided . . .
>
> (b) The panel . . . *shall set a release date unless it determines* that . . . consideration of the public safety requires a more lengthy period of incarceration . . .

California Penal Code §§ 3041(a), 3041(b) (West 2000) (emphasis added). Significantly, it does not appear that § 3041 uses the word "shall" in an absolute or mandatory sense. The syntax of subdivision (a) implies that "shall" modifies the adverb "normally", and "normally" directly modifies the verb "set". Further, in subdivision (b), "shall" is qualified by the phrase "unless it determines".

Nonetheless, in 2002, without the assistance of a definitive California Supreme Court interpretation, the Ninth Circuit found the language of § 3041 to be mandatory in nature, thereby creating a presumption of parole release and an associated liberty interest. McQuillion, 306 F.3d at 902; see also Biggs v. Terhune, 334 F.3d 910, 914 (2003) ("a state's statutory scheme, if it uses mandatory language, creates a presumption that parole release will be granted . . . and thereby gives rise to a constitutional liberty interest."). This Court would normally defer to the Ninth Circuit's interpretation of a state statute; however, under habeas corpus jurisprudence, circuit opinions are

---

[2] All further references to § 3041 are to the California Penal Code.

12

only persuasive authority, Taylor, 529 U.S. at 412; Clark, 331 F.3d at 1069; Duhaime, 200 F.3d at 600-01.

In 2005, the Supreme Court of California provided a definitive interpretation of § 3041's structure and language with its decision in In re Dannenberg, 34 Cal. 4th 1061, 1087 (2005). In Dannenberg, the California Supreme Court concluded that 1) the language of § 3041 is not mandatory, 2) there is no right to parole in California, 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date, and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). Dannenberg, 34 Cal. 4th at 1084, 1087-88, 1097-98.

Thus, this Court is faced with a choice between two conflicting interpretations to inform its decision regarding the nature of the language in § 3041. As a matter of clearly established federal law, the Supreme Court has regularly deferred to state court interpretations of state statutes. Indeed, "a State's highest court is the final judicial arbiter of the meaning of state statutes." Gurley v. Rhoden, 421 U.S. 200, 208 (1975) (internal quotations and citations omitted). When a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive. Id.

This general principle of deference to state court interpretations is also a part of the Supreme Court's clearly established habeas corpus jurisprudence. For example, in

13

1  Greenholtz, the Court noted that it was denied the benefit of the
2  Nebraska courts' interpretation of the scope of the liberty
3  interest, if any, that the State's parole statute was intended to
4  afford.  Greenholtz, 422 U.S. at 12. (citing approvingly Bishop
5  v. Wood, 426 U.S. 341, 345, 346 n.10 (1976) (demonstrating
6  deference to, and the need for, the holdings and interpretations
7  of state supreme courts when establishing interests protected by
8  due process); see Allen, 482 U.S. 369, 377 n.8 (1987) (implying
9  that a Montana Supreme Court decision would have been instructive
10 if there had been one on point); see also White, 370 F.3d at
11 1013, 1013 n.10 (using a Washington Supreme Court decision to
12 establish the non-existence of a liberty interest).  Thus,
13 federal courts have established a long standing practice of
14 paying great deference to the views of those courts who are
15 familiar with the intricacies and trends of local law.  Bishop,
16 426 U.S. at 346 n.10.

17      Acknowledging both the Supreme Court and Ninth Circuit
18 precedent regarding federal deference to state court
19 interpretations of state statutes, this Court will follow the
20 California Supreme Court's 2005 interpretation of § 3041,
21 explicitly recognizing that court's familiarity with, and
22 knowledge of, the laws governing California's penal system.

23      Having carefully considered all of the aforementioned
24 issues, this Court finds as follows:  First, the language of §
25 3041 is not mandatory.  Dannenberg, 34 Cal. 4th at 1087-88.  In §
26 3041, "shall" is not used in an absolute sense.  The syntax of
27 the key subdivision in § 3041 (see *infra* note 4) eviscerates the
28 mandatory strength and force of the word "shall".  Thus, the

14

statutory language belies the notion of a mandatory duty to set a release date. Id. Second, the lack of mandatory language in § 3041, especially when considered in light of 1) California's long standing jurisprudence denying the existence of a parole right,[3] 2) the statutory scheme of § 3041,[4] and 3) the broad discretion given to the BPT under the "noncapital murderers" exception to California's determinant sentencing law,[5] precludes a legitimate expectation of parole release and, thus, does not give rise to an associated liberty interest under clearly established federal law. Dannenberg, 34 Cal. 4th at 1084, 1087-88, 1097-98; 28

---

[3] Dannenberg, 34 Cal. 4th at 1097-98 ("one who is legally convicted has no vested right to the determination of his sentence at less than maximum . . . [i]t is fundamental to [an] indeterminate sentence law that every such sentence is for the [statutory] maximum unless the [parole] [a]uthority acts to fix a shorter term.") (internal citations and quotations omitted); see also In re Rosenkrantz, 29 Cal. 4th 616, 655 (2002); In re Minnis 7 Cal. 3d 639, 646 (1972)

[4] "The most natural and reasonable way to read [§ 3041] is that subdivision (a) applies only if subdivision (b) does *not* apply . . . ." Dannenberg, 34 Cal. 4th at 1087. In other words, subdivision (b) is not the gateway to parole. It is simply a precondition to the possibility of parole under subdivision (a), which uses the non-mandatory language, "shall normally set". Subdivision (b) applies to situations in which parole should be denied in the interest of public safety. Under Dannenberg, only when subdivision (b) does not apply, i.e., there is no threat to public safety, does the non-mandatory language of subdivision (a) apply. Id. Thus, "the statutory language belies the notion of a mandatory duty to set release date for all indeterminate life inmates." Id.

[5] Dannenberg, 34 Cal. 4th at 1087-88 ("the statutory language belies the notion of a mandatory duty to set release date for all indeterminate life inmates . . . [w]ithin this broad range, the parole authority was given virtually unbridled statutory power."); Id. at 1078 ("certain serious offenders, including 'noncapital' murderers . . . remain subject to indeterminate sentences . . . [a]s under prior law, life inmates actual confinement periods within the statutory range are decided by an executive parole authority. This agency, an arm of the Department of Corrections, is now known as the BPT.")

15

1  U.S.C. § 2254(d); see also Allen, 482 U.S. at 371; Greenholtz,
2  422 U.S. at 11-12 (standing for the proposition that the non-
3  existence of mandatory language precludes the finding of a
4  liberty interest in parole).
5       Under the Supreme Court's mandatory language standard, as
6  expressed in Greenholtz and Allen, this Court holds that the
7  unique structure and language of § 3041 precludes the finding of
8  a federal liberty interest in parole. Greenholtz, 422 U.S. at
9  12; Dannenberg, 34 Cal. 4th at 1087-88. Thus, with regard to
10 parole, California prisoners are not entitled to federal due
11 process protections as a matter of right. Consequently,
12 California's determination that Petitioner's federal due process
13 rights were not violated during his 1999 and 2000 parole hearings
14 was not contrary to or an unreasonable application of clearly
15 established federal law. 28 U.S.C. § 2254(d). Indeed, this
16 Court may only entertain an application for a writ of habeas
17 corpus on the grounds that Petitioner is held in violation of the
18 Constitution of the United States. 28 U.S.C. § 2254(a). The
19 non-existence of a federal liberty interest in parole precludes
20 such a finding as well as this Court's jurisdiction over
21 Petitioner's present claims. The Court's decision today does
22 not, of course, preclude the existence of state due process
23 protections, found under state standards. See e.g. In re
24 Rosenkrantz, 29 Cal. 4th 616, 655 (2002); In re Minnis 7 Cal. 3d
25 639, 646 (1972).
26 //
27 //
28 //

**CONCLUSION**

For the aforementioned reasons, Petitioner's application for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

Dated: June 15, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE